**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| David Ames,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>Jefferson Pilot Financial Co., et al,<br><br>　　　　　Defendants. | No. CV 06-2088-PHX-PGR<br><br><br>**AMENDED ORDER**[1] |

Currently pending before the Court is the Defendants' Motion for Partial Summary Judgment Re: Erisa Preemption of Plaintiff's State Law Claims (Doc. 19). The Defendant moves for summary judgment on Plaintiff's state law claims for breach of contract (Count One) and bad faith (Count Two). Defendant maintains that good cause appears for its motion as Plaintiff's state law claims are preempted by the Employee Retirement Income Security Act of 1974 ("ERISA"). The Defendant's motion prompted the Plaintiff to file a Cross-Motion for Partial Summary Judgment which argues that there is no genuine issue of material fact as to whether the insurance plan falls under the safe harbor provisions of ERISA. Having considered the moving papers and the arguments of the parties, the Court now rules on the motions.

---

[1] This Amended Order is being entered for the sole purpose of correcting a typographical error in a statutory citation in the Order entered on September 17, 2007.

## I.     FACTUAL BACKGROUND

In August of 2002, StorageTrac.com (StorageTrac"), through its insurance agent, submitted a Request for Proposal to Jefferson Pilot for basic Life and Accidental Death and Dismemberment Insurance, supplemental Life and AD&D and short term and long term disability insurance. The Request for Proposal outlined the particulars for the insurance coverage requested and the employee eligibility requirements. On September 11, 2002, StorageTrac submitted its Voluntary Benefit Program Agreement/Application to Jefferson Pilot. The application required a variety of information about StorageTrac, including information pertaining to its financial health, its tax identification number and legal structure. Furthermore, StorageTrac was asked to identify the number of eligible employees, to choose the minimum number of hours for an employee to be eligible for insurance, the waiting period before current employees were eligible, and the waiting period for new employees.

Thereafter, Jefferson Pilot accepted StorageTrac as a participating Employer, and StorageTrac submitted the initial premium by way of company check. Pursuant to the application, StorageTrac was to receive a supply of group certificates from Jefferson Pilot and agreed to distribute them to each employee enrolled in the program. The application also contained an "ERISA Plan Supplement" that stated the following:

> Summary Plan Description (SPD) – ERISA generally requires private employers of all sizes to distribute Summary Plan Descriptions to their employee benefit plan participants . . . Jefferson Pilot Financial Insurance Company's certificate of group insurance can serve as the Summary Plan Description if the following information and required Statement of ERISA rights are added.

That required information included the name of (1) the Plan Administrator or Fiduciary, (2) the Plan Trustees, and (3) an Agent for service of Legal Process. Furthermore, other required information such as whether or not there was any collective bargaining agreement in place, the signature of a StorageTrac representative evidencing StorageTrac's acceptance of that portion of the Agreement, and the date that StorageTrac requested the SPD to be added.

1 Without this required information, the ERISA Plan Supplement document states that there
2 is no SPD.

3     Pursuant to the Plan, only eligible employees were able to obtain the disability
4 insurance. If the number of participating employees dropped below ten employees or 25
5 percent of the eligible employee group, Jefferson Pilot could terminate the insurance. A
6 Notice of Termination letter was sent to StorageTrac on August 19, 2005, informing
7 StorageTrac that the policy was being terminated because participation indeed fell below the
8 required amount.

9     David Ames, the Plaintiff in this matter, was an employee of StorageTrac and
10 submitted a claim for eligibility of LTD benefits. After Jefferson Pilot reviewed the
11 Plaintiff's medical records, it notified the Plaintiff that the medical information submitted
12 failed to identify a valid medical reason for his inability to return to work after the
13 Elimination Period. Plaintiff appealed Jefferson Pilot's decision, and Jefferson Pilot
14 considered additional records in conjunction with the appeal. However, on November 11,
15 2005, Jefferson Pilot informed the Plaintiff that the decision was upheld and his request for
16 LTD benefits was denied. On May 26, 2006, the Plaintiff rendered a second appeal which
17 was rendered moot when he instigated the present lawsuit in August of 2006.

18 **II.     LEGAL STANDARD AND ANALYSIS**

19 The existence of an ERISA plan is a question of fact, to be answered in light of all the
20 surrounding facts and circumstances, from the point of view of a reasonable person. *Stuart*
21 *v. UNUM Life Ins. Co. America*, 217 F.3d 1145, 1149 (9th Cir. 2000). "To determine whether
22 an insurance plan is an ERISA plan, a district court should consider 29 U.S.C. § 1002(1),
23 which defines an employee welfare benefit plan, and 29 C.F.R.§ 2520.3-1(j), which clarifies
24 the meaning of 'establishing and maintaining' such a plan." *The Meadows v. Employers*
25 *Health Ins.*, 826 F. Supp. 1225, 1228 (D. Ariz. 1993). ERISA defines an "employee benefit
26 plan" to include, among others, "any plan, fund, or program . . . established or maintained
27 by an employer . . . for the purpose of providing its participants or their beneficiaries, through

28

the purchase of insurance . . . medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment[.]" 29 U.S.C. § 1002(1), (3); *Qualls v. Blue Cross of California, Inc.*, 22 F.3d 839, 843 (9th Cir. 1994). Clearly, the Jefferson Pilot group long term disability insurance provided to Plaintiff's employer constitutes a plan under the definition provided in 29 U.S.C. § 1002(1). However, the question of whether this plan is governed by ERISA or whether it falls under ERISA's safe harbor provisions is vigorously contested. The answer to this question thus turns on whether the plan was "established or maintained" by the employer Storagetrac.com.

A benefit plan can fall outside the coverage scope of ERISA if it meets the four requirements under the Department of Labor's "safe harbor" regulation, 29 C.F.R. § 2510.3-1(j). These four requirement are:

> (1) No contributions made by an employer or employee organization;
>
> (2) Participation in the program is completely voluntary for its employees or members;
>
> (3) The sole functions of the employer or employee organization with respect to the program are, without endorsing the program, to permit the insurer to publicize the program to employees or members, to collect premiums through payroll deductions or dues checkoffs and to remit them to the insurer; and
>
> (4) The employer or employee organization receives no consideration in the form of cash or otherwise in connection with the program, other than reasonable compensation, excluding any profit, for administrative services actually rendered in connection with payroll deductions or dues checkoffs.

It is well settled that when an employer provides an insurance plan to employees and satisfies all four requirements of the safe harbor regulation, the employer's mere purchase of insurance does not, by itself, create an employee welfare benefit plan under ERISA. *Stuart*, 217 F.3d at 1149. However, an employer's failure to satisfy just one requirement of the safe harbor provisions conclusively demonstrates that an otherwise qualified group insurance plan is an employee welfare benefit plan under ERISA. *Id.* at 1151-52. Only the first three

factors are at issue here as there is no dispute that the Defendant did not pay StorageTrac any compensation in connection with the policies.

### A. Contribution

The Defendant's contention with regard to the first safe harbor factor is that the Plaintiff's insurance policy is not exempt from ERISA coverage as a matter of law because StorageTrac was contractually bound to make the premium payments for the employees. According to the Defendant, whether or not the employer collected through payroll deductions or other employee contributions, the employer was contractually required to pay Jefferson Pilot and would not be excused from payment by the fact that it did not collect the monies. However, the Defendant cites no authority for its position. The Plaintiff opposes Defendant's argument arguing that StorageTrac was merely a conduit for premium payments that were actually made by the insured/employees and thus meets this criteria.

Although it is undisputed that StorageTrac agreed to make the deductions from payroll "in the amount required to pay the necessary premium coverage in force" and "[remit the deductions] to [Jefferson Pilot] on a timely basis, in accord with the billing schedule agreed upon," the Court concludes that such an agreement is not, by itself determinative of the issue. As this Court noted in *Schwartz v. Provident Life and Accident Insurance Co.,* 280 F. Supp. 2d 937, 941 (D. Ariz 2003), the dispositive question is whether StorageTrac actually absorbed any portion of the cost of those premiums, which by itself would be sufficient to bring the insurance policy outside of the safe harbor. Where an employer acts as a mere conduit for payment of premiums, the employer does not make contributions for purposes of the first safe harbor provision. *Id.* at 942 (*citing Levin v. UNUM Life Ins. Co. of America*, 33 F. Supp. 2d 1179, 1183 (N.D. Cal. 1998). As conceded by the Defendant itself, StorageTrac did not contribute to the payment of the disability insurance for any individual employee of the company. StorageTrac did nothing more with respect to contribution than collect its employees' premiums and forward a single check to Jefferson Pilot.

- 5 -

1 Although the Defendant opposes the contention that StorageTrac was a mere conduit, it cites no persuasive authority or evidence in support of this position. The Defendant attempts to rely on *Levin* v. *UNUM Life Ins. Co. of America*, in an effort to implicate the contribution prong; however, the Court finds the Defendant's reasoning without merit. The Defendant maintains that the *Levin* case found ERISA to apply because "[a]lthough the employer paid for the premiums on plaintiff's insurance policy, it did so as plaintiff's agent . . . with the plaintiff remaining personally liable for the premiums." The Defendant argues that StorageTrac is legally responsible for the premium payments, acting as more than a mere conduit, which distinguishes this case from *Schwartz*.

The Defendant is incorrect in citing the conclusion of the *Levin* case. As the Plaintiff notes, the Levin court concluded that ERISA did not apply because: (1) the insured fell within the class of individuals who 'shall not be deemed employees' citing 29 C.F.R. 2510.3-3(c)(1); and (2) the policy at issue was an individual health plan not subject to ERISA as the corporation paid for the plaintiff's premiums as plaintiff's agent, with the plaintiff himself remaining personally liable for the premiums. *Levin*, 33 F. Supp. 2d at 1183. The language in the policy application states that StorageTrac "agree[s] to be responsible for all premiums payable with respect to any of our employees who will be insured under the Policy . . ." The Defendant requests that the Court interpret this provision to mean that StorageTrac was a guarantor rather than a conduit. The Court, however, declines to do so. Although the Defendant argues otherwise, there is no evidence in the record before the Court to support the conclusion that StorageTrac would be compelled to pay the premium on behalf of its employees whether or not it received payment from the employee. Since it is otherwise undisputed that StorageTrac made no contributions, the Court concludes that the first prong of the safe harbor provision has been met.

### B. Voluntariness

If participation in the group insurance plan was not "completely voluntary" for StorageTrac's employees, ERISA governs the plan. 29 C.F.R. § 2510.3-1(j)(2). "The

- 6 -

purpose of the voluntariness prong is to identify programs sponsored by the employer and meant to be a benefit of employment." *The Meadows v. Employers Health Insurance*, 826 F. Supp. 1225, 1229. In *Meadows*, this Court concluded that the employer, School Services, demonstrated its intent to establish an insurance plan as a benefit for its employees by requiring 100% participation. *Id.*; *see Cote v. Durham Life Ins. Co.*, 754 F. Supp. 18, 21 (D. Conn. 1991). The Defendant, relying on *Meadows*, contends that since StorageTrac had a minimum participation level in the Plan, this is enough to show that the Plan is not exempt from ERISA. For reasons demonstrated below, the Court disagrees.

In *Meadows*, the employer agreed to 100% participation of all eligible employees for life and accidental death and dismemberment, and 75% participation of all eligible employees for medical coverage. 826 F. Supp. at 1229. If participation dropped below 100% and 75% respectively, coverage would terminate. *Id.* The *Meadows* holding was narrower than that argued by the Defendant. By requiring 100% participation, the employer in *Meadows* had established its intent to establish an insurance plan for its employees. The present matter is factually and legally distinguishable.

It is true that StorageTrac had a minimum participation level in the Plan, but that participation level was not 100% as in *Meadows*. The application that StorageTrac completed had a Minimum Requirements clause that stated, "[e]nrollment acceptance of at least 10 employees or 25% of eligible employee group, whichever is greater, per coverage during the initial defined enrollment period. In addition, premium must total at least $100 per month per coverage." However, the application did not permit the employer to choose a minimum level of participation; Jefferson Pilot determined the minimum level of participation as well as the minimum monthly premium. Furthermore, according to Jefferson Pilot's contact at StorageTrac, the employer did not recommend the long-term disability insurance to employees or suggest which voluntary coverages to choose. In this case, unlike *Meadows* and *Cotes*, the minimum participation level chosen by Jefferson Pilot is not enough to show that the insurance program is an ERISA benefit plan. As stated above, the

1    participation level was minimal and not 75-100% as was present in the previously referenced
2    cases. As persuasively argued by the Plaintiff, the program had a minimum level of
3    employee participation because it would be financially disadvantageous for Jefferson Pilot
4    to administer an insurance program with less than a minimum level of insured. The presence
5    of a minimum participation level does not suggest StorageTrac's intent to offer the Plan as
6    a benefit of employment.

### C.     Endorsement

If the employer's involvement in a group insurance program rises to a level of "endorsement", ERISA governs the plan. 29 C.F.R. 2510.3-1(j)(3). Thus, StorageTrac's involvement in the plan must not exceed that of a "mere advertiser who makes contributions on behalf of its employees." *Kanne v. Connecticut General Life. Ins. Co.*, 867 F.2d 489, 492 (9th Cir. 1989); *Credit Managers Ass'n v. Kennesaw Life & Accident Ins. Co.*, 809 F.2d 617, 625 (9th Cir. 1987). The policy behind this prong of the safe harbor requirement is to prevent situations where the employer is taking positions on behalf of, or in coordination with, the insurer or administrator. *The Meadows*, 826 F. Supp. at 1229. However, 29 C.F.R. § 2510.3-1(j)(3) does allow the employer to perform certain duties and still remain within the safe harbor of the regulation. An employer may permit the insurer to publicize the program and may collect premium payments through payroll deductions and remit them to the insurer. *The Meadows*, 826 F. Supp. at 1229. An employer does not endorse an insurance program as long as it performs no more than ministerial administrative tasks that do not constitute abandonment of its neutrality with regard to its operation of the insurance program. *Zavora v. Paul Revere Life Ins. Co.*, 145 F.3d 1118, 1122 (9th Cir. 1998).

The Defendant contends that StorageTrac clearly endorsed the Plan and was responsible for its administration. In support of this claim, the Defendant asserts that StorageTrac endorsed the Plan by selecting the options it wanted for the policy, allowing Jefferson Pilot access to its employees for enrollment purposes, holding meetings to promote existing and new programs, agreeing to be responsible for all premiums, requesting a

- 8 -

Summary Plan Description, making changes to the program, accepting a "group administration kit" from Jefferson Pilot, and identifying itself as the Plan Administrator. The Court will address the arguments individually below.

First, the Defendant maintains that selecting certain options for the Plan, such as requiring that its employees work for 30 days before reaching eligibility, demonstrates StorageTrac's involvement as more than a mere advertiser. It is undisputed that in completing Jefferson Pilot's application, StorageTrac was required to identify the number of its eligible employees, the minimum number of hours for an employee to be eligible for insurance, the waiting period before current employees were eligible, and the waiting period for new employees. In addition, StorageTrac also selected the elimination period, the benefit duration and the benefit percentage of monthly earnings. The Defendant argues that "[]these things demonstrate the thought and effort put into the formulation of the Plan by StorageTrac" and clearly show that StorageTrac was more than an advertiser. The Court disagrees. The fact that StorageTrac selected certain options from a list dictated by Jefferson Pilot when completing its application does not amount to an endorsement of the Plan. When an employer performs such activities as maintaining a list of eligible employees, selecting the specific benefit to be made available to its employees, selecting the specific elimination period to be made available to its employees, it is not deemed as endorsing the Plan. *Zavora*, 145 F.3d at 1121. Instead, it is performing the type of ministerial administrative duties that courts have held not to satisfy endorsement. *See*, *e.g.*, Schwartz, 280 F. Supp. 29 at 943-44.

Next, the Defendant argues that the Plaintiff endorsed the Plan by agreeing to give Jefferson Pilot unrestricted access to its employees and by agreeing to hold annual employee promotional meetings. Jefferson Pilot contends that StorageTrac, with the assistance of its independent insurance agent, was actively participating in meetings that went over the benefits available, how to fill out forms, billing and other particulars of the plan. However, the Court is unpersuaded that such an agreement amounts to endorsement.

Pursuant to the application, Jefferson Pilot was granted access to StorageTrac's employees "for the purpose of explaining the Voluntary Program(s) and enrolling participants. Although Jefferson Pilot maintains that the Tucson insurance agent dispatched to explain the offered plan was acting at the behest of StorageTrac, the Court disagrees. As noted by the Plaintiff, the fact that Jefferson Pilot used an agent instead of an employee to promote the Plan does not change the outcome. It was Jefferson Pilot that required the insurance agents to be appointed as Jefferson Pilot providers before being permitted to present the Plan to StorageTrac, and it was Jefferson Pilot that provided all the documents for the presentation. *See, e.g., Golt v. Aetna Life Ins. Co.*, 186 F.3d 1184, 1189 (9th Cir. 1999) ("The determination of which party a broker is acting for as to a particular matter depends on which party requested him to do the particular thing.") Furthermore, each page of the presentation materials bears indicia of Jefferson Pilot's grant of authority to the agent Although Jefferson Pilot has not articulated the bases for its claim the insurance brokers were acting on behalf of StorageTrac, the Court still concludes that the agents' actions are not attributable to StorageTrac and that Jefferson Pilot guided the promotional process.

According to the record before the Court, it was Jefferson Pilot representatives and not StorageTrac personnel that held meetings with manager, supervisors and employee groups to distribute product brochures and enrollment forms as part of their promotional process. Jefferson Pilot's agents explained the benefits package that it was offering, how its insurance forms were to be filled out, how the employees would be billed, and other particulars of the program. There is no evidence to persuade the Court that StorageTrac did not remain neutral during this process.

Third, the Defendant again attempts to persuade this Court that StorageTrac acted as a guarantor rather than a conduit regarding insurance premiums elevating its position to that of endorser. The Court has already rejected this argument in a previous portion of this opinion and stands by its earlier analysis.

Fourth, the Defendant argues that StorageTrac requested a Summary Plan Description ("SPD") for the Plan. According to the Defendant, this clearly evidences StorageTrac's endorsement and integral involvement with the Plan. However, as in *Zavora*, it was Jefferson Pilot that drafted the SPD and reserved to itself discretionary authority. 145 F.3d at 1122. Furthermore, the alleged SPD is missing several pertinent pieces of information necessary for it to even qualify as a Plan. For example, the names, titles and addresses of any trustee or trustees (if they are persons different from the administrator) and the circumstances which may result in disqualification, ineligibility, or denial or loss of benefits are missing. See 29 U.S.C. § 1022(b). The policy was actually issued to the Commerce Trust Company as Trustee for Jefferson Pilot Financial Insurance Company Voluntary Insurance Trust, but neither entity is mentioned in the purported SPD. A reasonable inference cannot be drawn between StorageTrac's affirmation by marking the yes box when asked by Jefferson Pilot whether it should provide SPD and its purported endorsement of the policy. All of the pertinent information on that page was left blank, and as the ERISA Plan Supplement document makes clear, without this information there is no SPD.

The Defendant's fifth argument in support of endorsement is that StorageTrac made changes to the Plan through a Group Policy Amendment Request Form. The Defendant maintains that this is the "clearest indication of StorageTrac's control over and endorsement of the Plan." The Defendant argues that the selection and amendment of the terms of the Plan is more than a ministerial function and unequivocally rises to the level of endorsement. Although the Plaintiff does not dispute that it submitted a Group Policy Amendment Request Form, it did not do so to make substantive changes to the policy. The Plaintiff merely requested that Jefferson Pilot change the waiting period language for all employees from 30 days to one month. Courts recognize that in selecting the specific benefit period to be made available to its employees the employer is not endorsing the Plan for purposes of the safe harbor provisions. *Schwartz*, 280 F. Supp. 2d at 943-44. As such, the Defendant's argument fails to persuade this Court that StorageTrac endorsed the Plan as a matter of law.

Next, the Defendant points out that Jefferson Pilot sent a group administrative kit to StorageTrac which shows that StorageTrac was actually administering the Plan and not serving as a mere advertiser. Although there is no evidence that StorageTrac received such a kit, the Defendant claims that this does not discount the fact StorageTrac was responsible for the Plan's administration. Again, the Defendant's argument is unpersuasive. As other courts have concluded, an employer can be a plan administrator in name only and still fall within the safe harbor regulation. *Zavora*, 145 F.3d at 1121.

The Defendant's final argument with regard to endorsement is that the SPD identified StorageTrac as the Plan Administrator. As Administrator, StorageTrac was responsible for collecting and depositing contributions, maintaining records of Plan participants, and authorizing the payment of plan expenses. This, according to the Defendant, is clear evidence of endorsement. However, the Defendant ignores the fact that an employer can be identified as a plan administer without violating the safe harbor regulation. For example, in *Zavora* the court concluded that the employer was a plan administrator in name only because, although the employer conducted ministerial functions such as determining employee eligibility, publicizing the plan, deducting and remitting premiums, and distributing certificates of insurance, the insurer prepared the SPD and reserved to itself full and exclusive discretion to determine eligibility for benefits and to interpret the policy. 145 F.3d at 1121. In the case at hand, StorageTrac simply had nothing to do with the operation of the insurance plan. As noted by the Plaintiff, it was the Defendant who created the SPD and reserved to itself "the sole discretionary authority to determine eligibility and to administer claims in accord with its interpretation of policy provisions." [Judge, this is quoting the Defendant's SOF] The Plaintiff has produced considerable evidence to support his contention that StorageTrac was a plan administrator in name only. As in *Zavora*, the application for insurance reserved to Jefferson Pilot the full, final, binding and exclusive discretion to determine eligibility for benefits and to interpret the policy. *Id.*

### III. CONCLUSION

The evidence taken as a whole leads the Court to the conclusion that StorageTrac served no function other than that of a conduit with regard to Jefferson Pilot's insurance and permits a determination that StorageTrac did not establish or maintain an ERISA plan for disability insurance.

IT IS ORDERED that Defendant's Motion for Partial Summary Judgment Re: ERISA Preemption of Plaintiff's State Law Claims (Doc. 19) is DENIED.

IT IS FURTHER ORDERED that the Plaintiff's Cross-Motion for Partial Summary Judgment (Doc. 27) is GRANTED.

In light of the parties' Stipulation to Extend Expert and Discovery Deadlines (Doc. 43),

IT IS ORDERED that the expert disclosure deadline is now November 16, 2007. In addition, all discovery is due March 17, 2008.

DATED this 27th day of November, 2007.

Paul G. Rosenblatt
United States District Judge